1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JUAN RAZO RAMIREZ,                        No.  2:16-cv-0234 KJN P

12                  Plaintiff,

13        v.                                   ORDER

14   BRIAN DUFFY, et al.,

15                  Defendants.

16

17   I.  Introduction

18          Plaintiff is a state prisoner, proceeding without counsel.  Plaintiff seeks relief pursuant to

19   42 U.S.C. § 1983.  Subsequently, plaintiff requested leave to proceed in forma pauperis pursuant

20   to 28 U.S.C. § 1915.  This proceeding was referred to this court by Local Rule 302 pursuant to 28

21   U.S.C. § 636(b)(1).  Plaintiff consented to proceed before the undersigned for all purposes.  See

22   28 U.S.C. § 636(c).

23          Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).

24   Accordingly, the request to proceed in forma pauperis is granted.

25          Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C.

26   §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in

27   accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct

28   the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

1    forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated to make monthly

2    payments of twenty percent of the preceding month's income credited to plaintiff's trust account.

3    These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

4    the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.

5    § 1915(b)(2).

6    II.  Screening Standards

7         The court is required to screen complaints brought by prisoners seeking relief against a

8    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

9    court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

10   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

11   monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

12        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

13   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

14   Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

15   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

16   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

17   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

18   Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

19   2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably

20   meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

21   1227.

22        Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

23   statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

24   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

25   Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

26   In order to survive dismissal for failure to state a claim, a complaint must contain more than "a

27   formulaic recitation of the elements of a cause of action;" it must contain factual allegations

28   sufficient "to raise a right to relief above the speculative level."  Id. at 555.  However, "[s]pecific

facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

III.  Plaintiff's Complaint

Plaintiff contends that while housed at the California Health Care Facility, Stockton ("CHCF"), since June 30, 2015, he has been held in "nonstop lockdown," which is "mentally destroying" him. (ECF No. 1 at 2.) Plaintiff claims that he attempted suicide on July 8, 2015, July 9, 2015, September 9, 10, and 11, 2015, and September 15, 2015. (ECF No. 1 at 2.) Plaintiff states that his mental health care is ineffective, his safety is at risk, and argues that he must be released from prison for his own safety, or returned to Mule Creek State Prison ("MCSP") where he was successfully housed in the past.

IV.  Discussion

First, to the extent plaintiff seeks release from prison, he must challenge his conviction through a petition for writ of habeas corpus under 28 U.S.C. § 2254. The undersigned declines to construe the instant pleading as such a petition because plaintiff was convicted in the Los Angeles County Superior Court,[1] and plaintiff provided a document demonstrating that he was pursuing a habeas petition in the Central District of California in Case No. CV 15-6310 AG (PLA). (ECF No. 1 at 9.)

Second, to the extent plaintiff seeks a court order transferring him to MCSP, such claim is unavailing. Inmates do not have a constitutional right to be housed at a particular facility or institution or to be transferred, or not transferred, from one facility or institution to another. Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976);

---

[1] People v. Razo Ramirez, 2014 WL 1615614 (Cal. Ct. App. July 20, 2004).

Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam).  Nor does an inmate have a constitutional right to any particular classification.  Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987).  Alleged deprivations of rights arising from prison officials' housing and classification decisions do not give rise to a federal constitutional claim encompassed by the Fourteenth Amendment.  Board of Regents v. Roth, 408 U.S. 564, 569 (1972).  State statutes and regulations give rise to an interest protected by the Fourteenth Amendment only where the restraint on a prisoner's liberty "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 483 (1995).  Inmates have no federal constitutional right to particular procedures established by state law.  Toussaint v. McCarthy, 801 F.2d 1080, 1096-97 (9th Cir. 1986), abrogated in part on other grounds, Sandin, 515 U.S. at 472.  On the basis of these authorities, the court finds that plaintiff's allegations concerning classification and housing fail to state a Fourteenth Amendment claim upon which relief may be granted.

Third, injunctive relief is inappropriate.  Due to concern for plaintiff's well-being, the court requested briefing from the Attorney General on two separate occasions:

In the first instance, the court ordered a response to the initial pleading, where plaintiff stated his "life is in grave risk of imminent and immediate danger." (ECF No. 1 at 1.)  On February 23, 2016, by special appearance, the Supervising Deputy Attorney General noted that plaintiff was sent to the Department of State Hospitals ("DSH") at CHCF, "in an attempt to stabilize his declining mental health."  (ECF No. 5 at 1.)  Dr. E. Harris, a staff psychiatrist, provided a declaration explaining plaintiff's mental health care and ongoing treatment.  (ECF Nos. 5-1 at 1-2.)  Plaintiff was suffering from depression with suicidal ideation and fearfulness with alleged enemy concerns at Valley State Prison, and was self-injurious with cutting and head-banging.  During plaintiff's inpatient stay with DSH, he was prescribed antidepressant medication with good overall effects, but continued to be manic and agitated with multiple demands.  He became highly obsessed with discharge and transfer plans, as well as his alleged enemy concerns, all of which preoccupied him during his in-patient stay.

////

1         Plaintiff was clinically discharged from DSH on February 18, 2016, to the Enhanced

2 Outpatient Program ("EOP") level of care at CHCF.  CHCF staff recommended that plaintiff be

3 transferred to either MCSP or the California Substance Abuse Treatment Facility ("CSATF"),

4 both of which contain Sensitive Needs Yards where plaintiff can be safely housed, and provide an

5 EOP level of mental health care.  The classification representative endorsed plaintiff for transfer

6 to CSATF based upon plaintiff's case factors, housing and transportation availability, and

7 California Penal Code § 5068 consideration.[2]  (ECF No. 5 at 2.)

8         Plaintiff was not housed in a locked-down unit, or a segregated unit, and was not on

9 suicide watch. (ECF No. 5-2 at 2.)  The declarations provided with the special response reflect

10 plaintiff expressed enemy concerns at Valley State Prison and California Men's Colony.  (ECF

11 Nos. 5-1 at 1-2; 5-2 at 2.)  Plaintiff did not identify enemy concerns at CHCF.  (ECF No. 5-2 at 2,

12 14.)  Plaintiff agreed during the classification hearing that he could be safely housed in the DSH

13 Intermediate Care Facility ("ICF") Program.  (ECF No. 5 at 3; 5-2 at 2, 9-12.)  Plaintiff's August

14 27, 2015 Classification Review reflects that plaintiff is endorsed for sensitive needs yard housing,

15 and expressly states that plaintiff does not meet the criteria for placement in the Vacaville

16 Psychiatric Program  ("VPP") ICF dorm, that VPP cell housing is inappropriate, and the ICC

17 recommended an ICF Cell program. (ECF No. 5-2 at 11.)  On February 19, 2016, CHCF staff

18 recommended that plaintiff be transferred to MCSP.  (ECF No. 5-2 at 6.)

19         On the second occasion, plaintiff, now housed at the California Medical Facility, filed a

20 letter on May 19, 2016, threatening to kill himself "very soon," and appeared to claim he had

21 been housed in "nonstop" indoor lockdown in "complete isolation" since April 15, 2016, which

22 was causing him suicidal ideation.  (ECF No. 11.)  Plaintiff sought a court order transferring him

23 back to MCSP.  (Id.)  The court again ordered a response by the Attorney General.  On June 6,

24 2016, by special appearance, the Supervising Deputy Attorney General states that "the DSH

25 Vacaville treatment team is taking appropriate safeguards and doing everything possible to

26 maintain plaintiff's safety."  (ECF No. 14 at 2.)

27

28   [2]  Section 5068 governs the examination and study of prisoners; classification; determination of prison; psychiatric or psychological reports and written evaluations.  Id.

5

1   Plaintiff had been placed in a mental health crisis bed at CSATF for psychiatric concerns;

2   after he failed to improve, he was transferred on April 15, 2016, from CSATF to the California

3   Medical Facility ("CMF") DSH Vacaville Psychiatric Program ("VPP") for an acute level of care.

4   (ECF No. 14 at 2.)  Dr. A. Grant, plaintiff's treating psychiatrist, who has known plaintiff for over

5   two years, provided a declaration.  (ECF No. 14 at 12-13.)  Dr. Grant evaluated plaintiff on May

6   23, 2016, during which plaintiff denied having had any suicidal ideation the past two weeks.  Dr.

7   Grant noted that plaintiff "showed no worsening of psychosis, and was in stable condition."

8   (ECF No. 14 at 13.)  However, plaintiff continued "to show a tendency to ramble on rather

9   relentlessly regarding his safety concerns and his need to get what he wanted."  (Id.)  Despite Dr.

10   Grant's efforts to reassure plaintiff that the treatment team would do their best to help him cope

11   with his persistent safety concerns, plaintiff was unreceptive, claiming that "the only thing that

12   would lower his high anxiety and depression is a placement in the prison of his choice."  (Id.)  Dr.

13   Grant opined that plaintiff "shows little interest in gaining any insight on how to better handle his

14   high anxiety and depression."  (Id.)  Dr. Grant further opined that plaintiff's "claims of suicidal

15   ideation/intent are manipulative in nature," and notes that he "has been making these same

16   complaints for the past two years, and that he insists that the only solution for his

17   anxiety/depression is a transfer to Mule Creek."  (Id.)

18   Staff psychologist C. Hoglund, also a member of plaintiff's treatment team, provided a

19   declaration.  (ECF No. 14 at 15-16.)  Dr. Hoglund interviewed plaintiff on May 26, 2016, during

20   which plaintiff "discussed suicidal ideation and problems being in isolation, as well as safety

21   concerns due to his instant offense."  (ECF No. 14 at 15.)  Plaintiff "did not tell [Dr. Hoglund]

22   that he was suicidal, but that 'lockdown makes' him suicidal."  (ECF no. 14 at 15.)  Plaintiff

23   wanted review of his grievances, and a recommendation to be returned to MCSP, "where he feels

24   safe."  (ECF No. 14 at 15.)  Plaintiff feels better in a cell and "cannot deal with a dormitory

25   setting."  (ECF No. 14 at 15-16.)  He expressed anger over a lack of program, due to an escape

26   investigation, which has since been resolved.  (ECF No. 14 at 16.)

27   Dr. Hoglund explained that plaintiff was placed in administrative segregation on February

28   25, 2016, prior to coming to DSH pending an investigation into plaintiff's alleged escape plans.

6

1    On May 25, 2016, plaintiff was cleared and progressed to full programming.  (ECF No. 14 at 16.)

2    Dr. Hoglund evaluated plaintiff again on May 31, 2016, during which plaintiff did not claim to be

3    suicidal, but that he felt "terrible -- and was not participating in as many therapeutic groups as he

4    expected."  (Id.)

5          In addition, the litigation coordinator at CMF provided a declaration that states that during

6    an annual classification committee review at MCSP, on April 18, 2014, plaintiff's classification

7    score dropped to 19, making him eligible for a custody reduction.  (ECF No. 14 at 6.)  During the

8    prior year's classification review, "plaintiff threatened suicide because at that time he was

9    potentially eligible for a transfer but did not want to move."  (Id.)  On April 18, 2014, plaintiff

10   again threatened suicide if he was moved; due to his threats, the committee referred plaintiff to

11   MCSP mental health staff for evaluation.  (Id.)  Also, the committee referred plaintiff's case to a

12   Classification Services Representative ("CSR") with a recommendation that plaintiff be

13   transferred to a Level II prison, Sensitive Needs Yard.  (Id.)  On May 6, 2014, the CSR endorsed

14   plaintiff for transfer to the Correctional Treatment Facility-II, Sensitive Needs Yard based on his

15   classification score.  (ECF No. 14 at 6, 8.)

16         Thus, the record reflects that plaintiff was housed at Valley State Prison from October 20,

17   2014, through June 17, 2015.  (ECF Nos. 1 at 26; 5-2 at 14.)  At some point, plaintiff was

18   transferred to CHCF.  Plaintiff was transferred to the CSATF in Corcoran on February 22, 2016.

19   (ECF No. 5-2 at 1.)  Plaintiff was transferred from CSATF to CMF on April 15, 2016, where

20   plaintiff remains housed in the DSH VPP for mental health treatment.  (ECF No. 14 at 2.)  The

21   litigation coordinator provided a declaration stating that there are no identifiable safety concerns

22   with plaintiff's current housing.  (ECF No. 14 at 6.)  Plaintiff is being followed by an

23   Interdisciplinary Treatment Team, and is given opportunities to program and participate in

24   treatment programs.  Finally, there are no immediate plans to discharge plaintiff from the DSH,

25   and he will remain with DSH until his treatment team deems he is well enough to return to CDCR

26   custody."  (ECF No. 14 at 6.)

27         Upon review of the two informal responses from the Attorney General, the court finds that

28   plaintiff is receiving mental health care, and is not being subjected to inappropriate lockdown or

7

1   isolation.  Moreover, the classification records demonstrate that while he was housed in CDCR

2   custody, plaintiff's safety and housing concerns were being addressed by assignment to a special

3   needs yard and cell housing rather than dormitory housing.  Therefore, plaintiff is not entitled to

4   injunctive relief.

5          Finally, plaintiff's pleading is too vague and conclusory for the court to determine

6   whether plaintiff can state a cognizable civil rights claim.  As set forth above, plaintiff cannot

7   state a cognizable claim based on his desire to only be housed at MCSP.  Plaintiff has no

8   constitutional right to be housed at a prison of his choice.  Also, plaintiff does not identify the

9   individuals he seeks to name as defendants.  Rather, plaintiff provides a history of events

10  interwoven with his safety concerns stemming from his underlying conviction.  Similarly,

11  plaintiff's vague reference to "ineffective" mental health care is insufficient.[3]

12         Thus, the court has determined that the complaint does not contain a short and plain

13  statement as required by Fed. R. Civ. P. 8(a)(2).  Although the Federal Rules adopt a flexible

14  pleading policy, a complaint must give fair notice and state the elements of the claim plainly and

15  succinctly.  Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff must

16  allege with at least some degree of particularity overt acts which defendants engaged in that

17  support plaintiff's claim.  Id.  Plaintiff must identify how each defendant allegedly violated

18

19  _____

    [3]  "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must
    show 'deliberate indifference to serious medical needs.' " Jett v. Penner, 439 F.3d 1091, 1096
20  (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to
    show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition
21  could result in further significant injury or the unnecessary and wanton infliction of pain,'" and
    (2) "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v.
22  Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted),
    overruled on other grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en
23  banc)).  Deliberate indifference is established only where the defendant subjectively "'knows of
    and disregards an excessive risk to inmate health and safety.'" Toguchi v. Chung, 391 F.3d 1051,
24  1057 (9th Cir. 2004) (emphasis added) (quoting Gibson v. County of Washoe, 290 F.3d 1175,
    1187 (9th Cir. 2002)).  Deliberate indifference can be established "by showing (a) a purposeful
25  act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the
    indifference." Jett, 439 F.3d at 1096 (citation omitted).  A difference of opinion between an
26  inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are
    not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th
27  Cir. 1989); Toguchi, 391 F.3d at 1058.

28

1  plaintiff's constitutional rights.[4]  Because plaintiff has failed to comply with the requirements of

2  Fed. R. Civ. P. 8(a)(2), the complaint must be dismissed.  The court, however, grants leave to file

3  an amended complaint.

4          If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions

5  about which he complains resulted in a deprivation of plaintiff's constitutional rights.  Rizzo v.

6  Goode, 423 U.S. 362, 371 (1976).  Also, the complaint must allege in specific terms how each

7  named defendant is involved.  Id.  There can be no liability under 42 U.S.C. § 1983 unless there is

8  some affirmative link or connection between a defendant's actions and the claimed deprivation.

9  Id.; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743

10  (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil

11  rights violations are not sufficient.  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

12          A district court must construe a pro se pleading "liberally" to determine if it states a claim

13  and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

14  opportunity to cure them.  See Lopez, 203 F.3d at 1130-31.  While detailed factual allegations are

15  not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

16  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678 (2009) (citing

17  Twombly, 550 U.S. at 555.  Plaintiff must set forth "sufficient factual matter, accepted as true, to

18  'state a claim to relief that is plausible on its face.'"  Ashcroft, 556 U.S. at 678 (quoting

19  Twombly, 550 U.S. at 570).

20              A claim has facial plausibility when the plaintiff pleads factual
               content that allows the court to draw the reasonable inference that
21             the defendant is liable for the misconduct alleged. The plausibility
               standard is not akin to a "probability requirement," but it asks for
22             more than a sheer possibility that a defendant has acted unlawfully.

23  _____

24  [4]  In his pleading, plaintiff recites numerous sections from Title 15.  (ECF No. 1 at 5.)  However,
    section 1983 provides no redress for prison officials' mere violation of state prison regulations.

25  See Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be
    premised on violation of federal constitutional right); Sweaney v. Ada Cnty., Idaho, 119 F.3d

26  1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for violation of federal law);
    Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370-71 (9th Cir. 1996) (federal and state law

27  claims should not be conflated; to the extent the violation of a state law amounts to a deprivation
    of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section

28  1983 offers no redress) (quotation marks omitted).

Where a complaint pleads facts that are merely consistent with a
defendant's liability, it stops short of the line between possibility
and plausibility of entitlement to relief.

Ashcroft, 556 U.S. at 678 (citations and quotation marks omitted). Although legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations, and are

not entitled to the assumption of truth. Id. at 1950.

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

make plaintiff's amended complaint complete. Local Rule 220 requires that an amended

complaint be complete in itself without reference to any prior pleading. This requirement exists

because, as a general rule, an amended complaint supersedes the original complaint. See Loux v.

Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original

pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an

original complaint, each claim and the involvement of each defendant must be sufficiently

alleged. Plaintiff is not required to append exhibits.

A prisoner may bring no § 1983 action until he has exhausted such administrative

remedies as are available to him. 42 U.S.C. § 1997e(a). The requirement is mandatory. Booth v.

Churner, 532 U.S. 731, 741 (2001). California prisoners or parolees may appeal "departmental

policies, decisions, actions, conditions, or omissions that have a material adverse effect on the[ir]

welfare. . . ." Cal. Code Regs. tit. 15, §§ 3084.1, et seq. An appeal must be presented on a CDC

form 602 that asks simply that the prisoner "describe the problem" and "action requested."

Therefore, this court ordinarily will review only claims against prison officials within the scope of

the problem reported in a CDC form 602 or an interview or claims that were or should have been

uncovered in the review promised by the department.

If plaintiff chooses to amend his complaint, he must use the court's form for filing a civil

rights action. Also, plaintiff may not challenge his underlying conviction or seek release from

prison by filing a civil rights complaint.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 9) is granted.

////

10

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3.  Plaintiff's motion for transfer (ECF No. 11) is denied.

4.  Plaintiff's complaint is dismissed.

5.  Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

a.  The completed Notice of Amendment; and

b.  An original and one copy of the Amended Complaint.

Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint." Failure to file an amended complaint in accordance with this order may result in the dismissal of this action.

6.  The Clerk of the Court is directed to send plaintiff the form for filing a civil rights complaint by a prisoner.

Dated:  June 30, 2016

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/rami0234.14n

11

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN RAZO RAMIREZ,                                    No.  2:16-cv-0234 KJN P

                Plaintiff,

      v.                                                              NOTICE OF AMENDMENT

BRIAN DUFFY,

                Defendant.

      Plaintiff hereby submits the following document in compliance with the court's order

filed_____.

              _____            Amended Complaint

DATED:

                                           _____

                                         Plaintiff